# CHARLESTON.

## BURBRIDGE *v.* SADLER.

Submitted September 26, 1898—Decided March 22, 1899.

1. PRESUMPTION OF PAYMENT—*Vendor's Lien—Lapse of Time.*
   Lapse of twenty years affords a presumption of payment of a lien for purchase money reserved in a deed conveying the legal title to land. (p. 43).

2. VENDOR'S LIEN—*Discharge—Statute of Limitations.*
   Burbridge, owing Lee a lien reserved in the deed of land to her, conveys the land to Sadler, and as part payment, Sadler conveys to Burbridge other land, and in the deed charges this land with a lien to indemnify Sadler against the lien of Lee. Burbridge pays to Sadler money, with the agreement that Sadler shall pay it on Lee's lien. Sadler fails to pay it. Such payment relieves Burbridge's land from the lien for Sadler's indemnity, and requires Sadler's land to pay the lien of Lee; and the right to claim such money as a discharge of the lien for indemnity is not subject to the statute of limitations, up to the amount of the lien of Lee, but beyond that it is subject to the statute. (p. 45).

3. STATUTE OF LIMITATIONS—*Trusts—Legal Demand—Equity.*
   Money deposited by one person with another to be paid to a third, and not paid, does not create a trust cognizable only in equity, not subject to the statute of limitations, but is only a legal demand, and subject to the statute. (p. 45).

4. STATUTE OF LIMITATIONS—*Deficiency in Acreage—Legal Demand—Equity.*
   A claim for compensation for deficiency in quantity of land conveyed by deed, where the purchase money has been paid, is a mere personal demand, not cognizable only in equity, but at law, and is subject to the statute of limitations. (p. 47).

5. MARRIED WOMEN—*Separate Estate—Deed—Vendor's Lien.*
   Where a deed conveying land to a married woman as separate estate reserves a lien or charge upon it for money, the fee or *corpus* may be sold for its payment. (p. 47).

6. GENERAL WARRANTY—*Title—Quantity.*

A covenant of general warranty in a deed for land relates to title, not quantity, and does not warrant quantity.  (p. 47).

Appeal from Circuit Court, Doddridge County.

Action by Melissa Burbridge against Rudolph Sadler, administrator, and others.  Judgment for plaintiff.  Defendants appeal.

*Reversed.*

CHARLES W. LYNCH and M. R. CROUSE, for appellants.

G. W. FARR, for appellee.

BRANNON, JUDGE:

In 1869, Gore conveyed to Melissa Burbridge a tract of two hundred and sixty-nine acres of land in Doddridge County, and for deferred purchase money she and her husband, J. P. Burbridge, executed notes, which were assigned to Lee.  Of this tract a parcel of thirty-seven and one-fourth acres was conveyed by the Burbridges to Roush, and later another parcel of fifty-one acres was conveyed by the Burbridges to Bonnell, and later the residue (one hundred and eighty and three-fourths acres) was conveyed by the Burbridges to Rudolph Sadler.  In the deed from Gore to Melissa Burbridge for the two hundred and sixty-nine acres, a lien was retained for the notes which came by assignment to Lee.  Roush paid cash for the parcel conveyed to him.  Bonnell executed four notes for unpaid purchase money on the fifty-one acres so conveyed by the Burbridges to him.  Sadler executed to Melissa Burbridge two notes for unpaid purchase money on the tract conveyed by the Burbridges to him, for which a lien was retained on the land; and, as further payment for the land conveyed by the Burbridges to Sadler, Sadler conveyed to Melissa Burbridge three contiguous tracts of land aggregating a tract of one hundred and seventy-five acres, and in the deed Sadler reserved a lien on the one hundred and seventy-five acres to indemnify him against any liens resting on the tract of one hundred and eighty and three-fourths acres conveyed by the Burbridges to Sadler.  In 1873, Lee brought a chancery suit to sell under his said lien the two hundred and sixty-nine acres conveyed by Gore to Melissa Burbridge, and made said sev-

erál sub-purchasers from the Burbridges parties. In 1874
Sadler brought a chancery suit against the Burbridges to
compel them to pay the Lee debt, and to that end to sell
the one hundred and seventy-five acres conveyed by Sad-
ler to Melissa Burbridge, under the clause in the convey-
ance retaining a lien on the one hundred and seventy-five
acres to indemnify Sadler against the lien resting on his
land for the Lee debt. The thirty-seven and one-fourth
acres which had been conveyed by the Burbridges to
Roush was later conveyed by Roush to Rudolph Sadler,
he thus owning the one hundred and eighty and three-
fourths acres and the thirty-seven and one-fourth acres.
Hutson had a judgment against Rudolph Sadler, and
in 1879 Hutson brought a chancery suit to sell the said
one hundred and eighty and three-fourths acres and the
thirty-seven and one-fourth acres to pay said judgment.
In this suit there was a decree, and under it said land was
sold, but as the sale was made by private sale, instead of a
public sale, the court set it aside. Susan Sadler, wife of
Rudolph Sadler, was the purchaser at said sale, and she
paid off the debt of Hutson. One Smith had a judgment
against Rudolph Sadler, and he filed a petition in the Hut-
son suit to enforce judgment against Sadler's land, and
charged that the money with which Susan Sadler had paid
off the Hutson judgment was really money of her husband,
and that she was not entitled to subrogation to the lien of
the Hutson judgment. The court, as stated, set aside
the sale, and held that Susan Sadler was not entitled to
subrogation, and referred the cause to a commissioner to
convene the liens on Rudolph Sadler's land. As will be
seen from 31 W. Va. 358, (6 S. E. 920), Susan Sadler ap-
plied to this Court for relief from said decree; and this
Court, though it affirmed the circuit court in setting aside
the sale to Susan Sadler, held that the money which she
paid under the sale, and which went to satisfy the Hutson
debt, was her separate estate, and that she was entitled
to be substituted to Hutson's lien. Afterwards Rudolph
Sadler died, and after his death Melissa Burbridge brought
a suit in the circuit court of Doddridge County against the
personal and real representatives of Rudolph Sadler and
others interested, including his creditors, alleging that she

had conveyed to Rudolph Sadler said one hundred and eighty and three-fourths acres, and that Sadler had conveyed, in part payment therefor, said one hundred and seventy-five acres, and had executed, in further payment, the two notes of three hundred dollars and one hundred and fifty dollars, and that they remained unpaid; and alleging the sale of the two hundred and sixty-nine acres by Gore to her, and the assignment of her and her husband's notes to Lee, and that Susan Sadler and others claimed debts against Rudolph Sadler's estate, and that he had died owning said two tracts of one hundred and eighty and three-fourths the thirty-seven and one-fourth acres; and alleging that Rudolph Sadler was indebted to her for some notes given to her by Bonnell, and assigned by her to Rudolph Sadler, which Sadler took to pay their proceeds on the Lee debt; and further alleging that said Sadler was indebted to J. P. Burbridge for cattle in an amount not stated in the bill, but stated, in the answer of Burbridge and wife in the Sadler suit to amount to one hundred dollars, and also in their amended answer in the Lee suit. She also alleged in her bill that there was a deficiency in quantity of the one hundred and seventy-five acres amounting to eighteen acres, for which she claimed compensation. All these causes were heard together, and were referred to a commisisoner for report as to the matters involved in them, and upon this report, on the 29th day of March, 1897, a decree was pronounced giving Lee's estate a first lien for one thousand three hundred and fifty-five dollars and fifteen cents, and giving to Melissa Burbridge a second lien for one thousand five hundred and twenty-four dollars and sixty-four cents, on the two tracts owned by Rudolph Sadler's estate, and giving Susan Sadler a third lien for one thousand four hundred and thirty-one dollars and seven cents, and giving said Smith a fourth lien for nine hundred and forty-one dollars and seven cents, and providing that out of the sum decreed to Melissa Burbridge there should be applied an amount sufficient to pay the Lee debt, leaving the balance as a lien in favor of Melissa Burbridge. From this decree Sadler's administrator and his heirs and Susan Sadler appeal.

These cases present considerable complication, growing

out of the fact that they have been so long sleeping, and involve matters dating back so far. As to some of these matters, no court can act with entire confidence, owing to the uncertainty of evidence, and the death of Sadler, disabling his side from fully representing its case. The Sadlers complain that the decree allows against them the one hundred and fifty dollar note given by Sadler to Melissa Burbridge for purchase money of the one hundred and eighty and three-fourths acres conveyed by Melissa Burbridge to Sadler. It is made clear that Sadler paid the three hundred dollar note given for that land, thus affording a likelihood that he paid the one hundred and fifty dollar note also. The latter note is not produced by Melissa Burbridge, who seeks to make it the basis of a debt against a dead man's estate. Her husband says it was filed in the original papers in these causes, but it does not appear. It is somewhat strange that it is lost when no other papers are wanting. I do not see that it is made an exhibit in any of those original papers, and therefore why should it be filed? What papers was it filed with? Its non-production by the person asking it to be used as evidence of a debt is a circumstance in favor of the theory of its payment. True, the deed speaks of it, but the grantor should be able to produce it. J. P. Burbridge, being a party to this suit cannot be heard to prove its continued existence as a debt, and thus show its nonpayment, because that would be allowing him to negative payment by Sadler, and thus allow the living man to give evidence upon a transaction occurring between him and a dead man, or between the dead man and his wife, when the dead man is not here to speak of that transaction. Burbridge cannot give evidence of nonpayment by Sadler. The payment of the other note and the absence of the one hundred and fifty dollar note lend additional force to the rule of law laid down in *Evans* v. *Johnson*, 39 W. Va. 299, (19 S. E. 623), and *Criss* v. *Criss*, 28 W. Va. 388, that the lapse of twenty years affords a presumption of payment. That note fell due on the 1st day of May, 1873. It was never mentioned in any pleading until 1894, by Melissa Burbridge, as a demand against Sadler, and then he was dead. This laches of nearly twenty-two years counts strongly against the demand, under the prin-

ciples of equity, which emphatically discourage stale demands, especially where the immediate parties to the transaction are dead. *Cranmer* v. *McSwords*, 24 W. Va. 594; *Trader* v. *Jarvis*, 23 W. Va. 100. Why did not Melissa Burbridge sooner present this note in the Lee suit, and more especially why did she not file an answer in the Sadler suit against her to compel her to relieve Sadler's land from the Lee debt? For twenty years that suit stood without any answer from her mentioning any demand on this note as still existing, and the same is true of the other demands set up in 1894 for the first time. This one hundred and fifty dollar note was improperly charged by the decree against Sadler's estate to the credit of Melissa Burbridge.

The Sadlers also complain of the charge against them in favor of Melissa Burbridge of two one hundred dollars items,—one of cash, in 1873; the other of cattle, in 1875. They say these items are barred by the statute of limitations, as they were never claimed till 1894. Now, as to the item for one hundred dollars in cattle. Viewing it as an offset in favor of J. P. Burbridge, as it is set up in the Burbridge bill, it would be not allowable, because not in favor of Melissa Burbridge, but in favor of her husband, and it is blank in amount in that bill, and it is not there charged that these cattle were furnished to Sadler, to be paid by him on the Lee debt, and therefore it would be barred. But answers of Burbridge and wife in the suits of Lee and Sadler do set up that cattle item as one hundred dollars, and allege that the cattle were furnished by Burbridge and wife to Sadler with the understanding that he was to pay their proceeds on the Lee debt, and, this being so, I do not think the statute of limitations applies. The commissioner thought that the statute did not apply, because this item had been involved in the long-sleeping suits; but it was not involved, because never set up until in 1894. And just here I remark that the reference in the lifetime of Sadler, in the Hutson suit, to convene lienors, could not keep alive a mere open account. But, going back to the fact that the cattle were furnished to Sadler to be applied by him on the Lee debt, I do not regard the demand barred. Under this head, the question is, which land shall

pay that Lee debt,—Sadler's land, or the one hundred and seventy-five acres of Melissa Burbridge? In the first instance, it was Burbridge's debt; but, when she furnished Sadler cattle to pay on it, clearly that would relieve the one hundred and seventy-five acres *pro tanto*, because it would do what the charge upon that land in Sadler's deed to Burbridge bound the land to do,—that is, indemnify Sadler against the Lee debt. It would be furnishing money to Sadler to his indemnity, and he could not then say that Burbridge had failed to discharge the lien. With money in his pocket to pay Lee, furnished by Burbridge, Sadler would be estopped from calling on Burbridge's land to relieve Sadler's land, and Sadler's land would have to shoulder the lien to the relief of Burbridge's land to the extent of money furnished by Burbridge to Sadler to pay on the Lee debt. So, the charge of one hundred dollars for cattle furnished in 1875 was properly credited to Melissa Burbridge against Sadler's estate. But as to the one hundred dollars for cash paid Sadler in 1873, it was improperly allowed against the Sadlers, for the reason that it is nowhere in bill or answers set up as a payment or set-off, or as money deposited with Sadler to go on the Lee debt, and in the latter case it is more essential to set it up than as a mere payment or set-off. It is hardly material to say that the theory against the statute of limitations applying, namely, that the deposit of money to pay on the Lee debt constituted a trust, is not tenable. They would be mere personal demands. Where one hands another money to be paid to a third party, and he fails to do it, the depositor sues at law to recover the money, in *assumpsit* for money had and received. It is cognizable only in law, and not a trust cognizable only in equity. If it were the latter, the statute would not apply; but, as it is the former, it does apply. *Woods* v. *Stevenson*, 43 W. Va. 149, (27 S. E. 309); *Thompson* v. *Iron Co.*, 41 W. Va. 581, (23 S. E. 795). The decree in this case credits Melissa Burbridge with a sum larger than the amount of the unpaid Lee debt, and decrees the surplus against Sadler's land. This is error, because, beyond the amount of the Lee debt, the demand of Melissa Burbridge for cattle or money, or the Bonnell notes, would be barred by limitations; but as there

is less going to Melissa Burbridge than the Lee debt under the abatements made by us, the question is not very material.

The Sadlers complain that the decree charges against them the four Bonnell notes. For reasons stated above as to the cattle, I think they were properly charged to the credit of Melissa Burbridge and not barred. Nobody questions that said notes were assigned by Melissa Burbridge to Rudolph Sadler, and the only question is as to the purpose for which they were assigned. Were they assigned to be paid on the Lee debt? Burbridge and Lefever say so, but, parties to the suit, they cannot speak of this personal transaction with Sadler, since dead. But Roush clearly proves that they were assigned to Sadler to pay on the Lee debt. Certainly they were paid to Sadler. They are chargeable to his estate. However, Bonnell says the first of these notes was at least half paid before they were assigned to Sadler. The commissioner charges their full amount,—in fact more, as I see it. Only that first note after the deduction of the credits on it should be charged. Bonnell says it was half paid, but he merely approximates, and I think that the proper course is to apply the credits appearing on it as more certain.

Susan Sadler complains that her lien was not made a second lien on her husband's land instead of being made subordinate to the amount decreed Melissa Burbridge. Of course, that is error as to any surplus given Melissa Burbridge over the amount of the Lee debt; for such surplus was no lien, as Melissa Burbridge's demand beyond the Lee debt would only make her a general creditor, even if she was not barred, and Susan Sadler's debt was a fixed lien by subrogation to the Hutson lien. Susan Sadler also complains that her debt as allowed is too small. The date from which interest was computed on this debt and the amount on which interest was computed by the commissioner do not appear. The amount is clearly too small. I find a decree in the Hutson Case, made after the decision of this Court, which finds the debt of Susan Sadler to be one thousand one hundred and seventy-eight dollars and sixty-six cents, with interest from the date of that decree, and so adjudicates it against Sadler's estate. The date of

the decree does not appear.   That is *res judicata*, and that
decree fixes the amount of her debt. · It is binding on the
estate, and binding on Smith, who was a party to that suit,
and whose debt was also adjudicated in that decree.   .

This appeal does not involve the question of the allow-
ance to Melissa Burbridge of any sum for deficiency in
quantity of the one hundred and seventy-five acre tract,
unless we interpret the brief of the counsel for appellees as
a cross-assignment of error, as I do interpret it.   There-
fore, I pass on it.   That demand is barred by limitation.
It was cause of action at once on the execution of the
deed from Sadler to Melissa Burbridge.   Five years would
bar it.   It is not like the case of a demand for compensa-
tion for excess in quantity where lien for purchase money
exists.   There. I think, the lien extends to the amount due
for surplus land; but, if there is no lien in the deed of con-
veyance, compensation for the surplus must be recovered
in an action at law.   So, where there is a deficiency.   In
either case, like the sale of other property.   In case of defi-
ciency, compensation would be by action of trespass on
the case, or, waiving the tort, in *assumpsit*, the liability
being based on the theory of fraud and deceit in misrepre-
senting quantity.   8 Enc. Pl. & Prac. 887; *Kreiter* v. *Bom-
berger*, 22 Am. Rep. 750; *Hoyt* v. *City of Saginaw*, 2 Am.
Rep. 80.   *Crislip* v. *Cain*, 19 W. Va. 438, bases the liability
on fraud and deceit; therefore it is subject to limitation.
Clearly, recovery or liability is not based on breach of the
covenant of general warranty, as it only guarantees title,
not quantity; quantity merely pertaining to description of
the land..   Rawle, Cov. §§ 289, 297; 2 Devl. Deeds, § 1044;
Roat v. Puff, 3 Barb. 353; *Rickets* v. *Cickens*, 4 Am. Dec.
555.   For such amount as the Lee debt may exceed the
amount to be credited to Melissa Burbridge, the one hun-
dred and seventy-five acres conveyed to her by Sadler
must be sold to indemnify Sadler's estate.   The proposi-
tion of counsel that, as she is a married woman, her land
can only be rented, cannot be sustained.   The very deed
vesting estate in her created a fixed lien on the land, and
it binds the fee just as a vendor's lien binds the fee, re-
tained in a deed creating separate estate.   See *Manu-*

*facturing Co.* v. *Brockmyer,* 18 W. Va. 586. It was not a mere general debt, but a fixed lien.

These principles reverse the decree, and remand the cause for further decree in accordance therewith. Melissa Burbridge should be given leave, if she asks it, to amend her bill as to said one hundred dollar cash item, and retake her proof touching it.

*Reversed.*