# CHARLESTON.

Sibley *v.* Stacey and others.

Submitted January 20, 1903.　Decided April 18, 1903.

1. Demand—*Limitations.*
    A legal demand sued on in equity is subject to the statute of limitations and not *laches.* (p. 296.)

2. Covenant—*Deed—Warranty.*
    A deed which sells, grants, conveys 2,855 trees 30 inches and up and 1,733 trees 22 to 30 inch yellow poplar, 31 trees 30 inch and up and 50 trees 22 to 30 inch cucumber and 46 trees 30 inch and up, 21 trees 22 to 30 inch ash trees 22 inches and upward in diameter marked thus, K, now sound and growing upon the lands of the grantor imports a covenant or warranty that such trees exist of the kind and character named, as the language used is not a mere descriptive recital, but is the essence of the conveyance. (p. 294.)

3. Covenant—*Warranty.*
    On such covenant or warranty a suit may be maintained for a deficiency in the number of trees conveyed within ten years from the date thereof. (p. 296.)

4. Fraud—*Conveyance.*
    A conveyance fraudulent as to one creditor is void as to all others of the same class, and a decree adjudicating the fraudulent character of such conveyance as the one such creditor

inures to the benefit of all other creditors of the same class who take advantage thereof in proper time by proper pleadings.    (p. 296.)

5.  FRAUD—*Decree.*
    When the evidence relating to fraud is conflicting and tends to support the decree of the circuit court, such decree will not be disturbed unless plainly wrong.    (p. 297.-

6.  DECREE—*Debtor—Attorney—Fraud.*
    A decree in a debtor's suit to which creditors are not parties directing the payment of a certain fund to the attorney by virtue of an assignment thereof made to him by the debtor, is no bar to a suit by the creditor attacking the withholding and appropriation of such fund by the attorney as made with intent to delay, hinder and defraud the creditors of such debtor.    (p. 298.)

Appeal from Circuit Court, Greenbrier County.

Bill by Hiram W. Sibley against John E. Stacey and others. Decree for plaintiff, and defendant Carrie E. Thomas appeals.

*Reversed in part.*

H. S. RUCKER and RUCKER, ANDERSON & HUGHES, for appellant.

HENRY & GRAHAM and BROWN, JACKSON & KNIGHT, for appellees.

DENT, JUDGE:

Carrie E. Thomas appeals from a decree of the circuit court of Greenbrier County entered on the 1st day of August, 1900, in favor of Hiram W. Sibley and presents for determination the following two questions:

*First*: Was the claim of the plaintiff against John E. Stacey barred by *laches* or the statute of limitations?

*Second*: Was it error to hold appellant's deed from said Stacey dated September 9, 1895, fraudulent?

The facts as to the first proposition are as follows, to-wit: On the 13th day of September, 1889, John E. Stacey executed to plaintiff the following, to-wit:

"This indenture, made and entered upon this 13th day of September, 1889, by and between John E. Stacey and Louisa Stacey, his wife, of the county of McDowell and State of West

Virginia, parties of the first part, and Hiram W. Sibley, of the county of Monroe and State of New York, party of the second part,

WITNESSETH: That the parties of the first part, for themselves, heirs, and assigns, for and in consideration of the sum of $3,834.00 to us in hand paid, the receipt of which is hereby duly acknowledged, have bargained and sold, and by these presents do hereby bargain and sell, release, grant and convey with covenant of general warranty of title, unto the parties of the second part, their heirs and assigns, 2855 trees 30 inch and up & 1733 trees 22 to 30 inch yellow poplar, 31 trees 30 inch & up & 50 trees 22 to 30 inch cucumber, & 46 trees 30 inch and up, 21 trees 22 to 30 inch Ash trees 22 inches and upwards in diameter, marked thus K, now sound and growing upon the lands of the parties of the first part.

And it is further agreed that the parties of the second part shall have their own time to take the said trees of, and have the right of ingress, egress and regress for the purpose of cutting and removing said timber, together with the right of way over and through the lands of the said parties of the first part, and the use of such stone and timber as may be necessary to make roads and dams necessary for removing said timber by hauling or floating the same; with the right to make, build and erect the same necessary for hauling, splashing or floating the said timber off of said lands, or any timber on adjacent lands, or any other timber which the parties of the second part may have to float or move over or through said lands, except damage to growing crops, which shall be paid for by the parties of the second part.

The land on which said timber stands being as follows, to-wit:  A tract of land lying on Bull Creek, a tributary of Tug river, lying in McDowell county, West Virginia, and being about 1600 acres and deeded to John E. Stacey by one William Williams, deed, dated Jan. 17, 1887, and recorded in the Register's Office of McDowell county, in Deed Book No. 12, pages 44 and 45; also a tract of land lying in McDowell county on Panther creek, a tributary of Tug river, and was deeded to William Stacey by John E. Stacey, dated Oct. 15th, 1875, deed recorded in Deed Book No. 3, page 84 in Register's Office of McDowell county, W. Va., and was patented in the name

of Isom Blankenship, patent dated June 3d, 1843, calls for 10 acres; and Alfred Blankenship, dated May 30th, 1845, and call for 60 acres; said land on Panther creek was this day deeded back to John E. Stacey by William Stacey and wife. It is mutually agreed that there shall not be any splash dams built above Mr. J. E. Stacey's dwelling house where he now lives on the right hand fork of Bull Creek.

And in consideration of the foregoing premises, the parties of the first part do hereby agree to protect and take care of said timber as long as it may remain upon said premises.

In testimony whereof, the said parties of the first part have hereunto set their hands and seals this 13th day of September, 1889.

his<br>
JOHN E.   x   TRACY   (Seal)<br>
mark

her<br>
LOVICE   x   TRACY   (Seal)."<br>
mark

W. H. COLEMAN.

The plaintiff was a citizen of the State of New York, and purchased this timber as an investment, through an agent. In the year 1898, having discovered within ten months previous thereto that he had been deceived as to the number and size of the trees, he instituted this suit to require Stacey to make good the deficiency. There seems to be no question but that the deficiency exists and that Stacey fraudulently took advantage of plaintiff's agent by his representations as to the quantity and size of the timber. The decree ascertains the deficiency to be $1,589.00, less two credits amounting to $125.00.

This claim is a legal and not an equitable one, and is therefore governed by the statute, except in so far as the fraud of Stacey may have delayed or prevented its prosecution. It is founded on a written contract, and is not barred within less than ten years from the date of such contract. Section 6, chapter 104, Code. This contract covenants in express words that the number of trees sold marked with the letter K, are "now sound and growing upon the lands of the parties of the first part." If there was no other provision in relation thereto, the statute would begin to run from the date of the contract as to the covenant of quantity or quality express or implied. 8 Am. & En. En. Law, (2 ed..) 63, 223. The numebr of the

trees fixed is not a mere descriptive recital but is of the essence of the contract. The deed, however, contains the further covenant that the party of the first part will "protect and take care of said timber as long as it may remain upon said premises," thus virtually retaining dominion over the property until possession thereof is taken by the grantee. So that it might be a question whether the statute begins to run until the grantor fails to place the grantee in possession of the property on demand. This question, however, it is not necessary to decide, as ten years had not elapsed from the date of the deed at the time of the institution of the suit. For the same reason it is not necessary to consider the fraudulent concealment of the right of action. The claim being legal and not barred by the statute of limitations, *laches* would not defeat it.

. 'The second question, as to the fraudulent character of the deed appears to have been settled in the prior case in the same court of Bank of Roncevert against this appellant and others. This is a solemn adjudication that appellant's deed was fraudulent and void as to the Bank debt, and this adjudication remaining unreversed, cannot be called into question by the appellant in any collateral proceedings. It may be said that plaintiff was not a party to such suit, and has no right to take advantage of such adjudication. When fraud is once established against a conveyance as to one creditor it vitiates such conveyance as to all other creditors of the same class. As is said in Bump on Bankruptcy, section 34, "If there is an intent to delay, hinder or defraud a particular creditor, it is not necessary to establish an intent to delay, hinder or defraud all creditors. It is not, on the other hand, necessary to establish a specific design to delay, hinder or defraud the particular creditor who assails the transfer for the intent to delay, hinder and defraud one creditor renders the transfer void as to all." *Lockhard & Ireland* v. *Beckley et al.,* 10 W. Va. 87. Plaintiff was not required to show a fraudulent intent to defraud him but only to show that the deed was fraudulent as to a creditor of the same class, that is, one whose debt was prior to the conveyance. In short, plaintiff had only to show that the deed was fraudulent as to the debt of the Bank of Ronceverte to avoid it as to his debt. This he could not show by stronger evidence than by an adjudication already made to this effect. Appellant tries to escape the effects of such adjudication by claiming

that for certain reasons she consented to such decree. This cannot possibly destroy the effects of such adjudication. It is the solemn determination of the court whether made with her consent or without. If with her consent, it is her admission of record which she is forever afterwards estopped from denying, it matters not what her purpose in making it may have been. Without regard to this adjudication, however, the badges of fraud and circumstances of suspicious character, including the relationship of the parties, and their various dealings, the marriage contract, the original fraud of Stacey, his failure to answer the amended bill or testify in the case, are so numerous and glaring that it would be impossible for this Court to say that the conclusion reached by the circuit court was plainly wrong. Nor will it serve any good purpose to recite and comment on these various transactions at length, but it would only be an unnecessary encumbrance of the record. *Richardson* v. *Ralphsnyder,* 40 W. Va. 15.

Plaintiff insists as a counter-assignment of error that the following part of the decree, to-wit: "So far as the subject matter of litigation presented in this cause between plaintiff and defendant H. S. Rucker is concerned, relating to the fund in McDowell county, West Virginia, which the said H. S. Rucker claims under contract and assignment from his co-defendant, John E. Stacey, the court is of opinion, and doth so adjudge, order and decree, is not liable or subject to the plaintiff's debt, as it appears to the court, by a decree of the circuit court of said county of McDowell, in a cause lately therein pending in the name of *John E. Stacey* v. *G. W. Doak, trustee, & al.,* that said fund was disposed of in that court to said defendant H. S. Rucker, and that such action of that court, concerning that fund, cannot be enquired into by this Court, and that so far as this Court is concerned, the matter is *res adjudicata;* Wherefore, the court doth adjudge, order and decree that the said H. S. Rucker be and he is dismissed as a defendant to this cause; this Court, however, not meaning or intending to interfere with any further rights of the plaintiff, if any he has, to contest the matter further in the circuit court of McDowell county, and to this end this decree is without prejudice to the plaintiff," should be reversed and annulled and that H. S. Rucker should be required to pay the amount

referred to therein and received by him upon the plaintiff's debt.

There is nothing in this record to show that the question of the fraudulent receipt of such money by Rucker was ever involved in the litigation in McDowell county or in anywise passed upon or could have passed on in such litigation. But this question is presented for the first time by the bill in this cause. It therefore could not be a question of *res adjudicata* nor can its adjudication be avoided by sending the parties to McDowell county to litigate it. The question of fraud involved must be first determined by the circuit court.

The decree is clearly erroneous in this respect, and to this extent it will be reversed and annulled, and otherwise affirmed.

*Reversed in part.*