# CHARLESTON.

TIMMS *v.* TIMMS.

Submitted September 4, 1903—Decided December 12, 1903.

1. CONVEYANCE—*Fraud.*

Where the grantee in a deed made to defraud the creditors of the grantor knows of the fraudulent intent of the grantor, or has notice of facts sufficient to excite the suspicions of a prudent man and put him on inquiry, he makes himself a party to the fraud. (p. 418).

2. FRAUDULENT CONVEYANCE.

T. and his wife conveyed to U., the brother of the wife of T., a house and lot in the city of Parkersburg, being all the estate owned by T., in consideration of $1900, assumed to be paid on the indebtedness of T. by U., the grantee; six hundred and sixty-five dollars of which was the balance due on a trust debt on the property conveyed and the residue of the consideration was made up of negotiable paper of T. mostly endorsed by U., a part endorsed by the brother of U., and most of it long past due and under protest. No lien was retained on the property conveyed to secure the payment of the notes so assumed by U.,.and U. made no inquiry as to any other indebtedness of T. and left T. in possession of the property free of rent, with authority to sell the same, and the excess over $1900, for which it might be sold by T. was to go to the wife of T., the sister of U. *Held:* Such conveyance is made in fraud of the creditors of T. and is void as to creditors. (p. 419).

3. SYLLABUS APPROVED.

*Livesay* v. *Beard,* 22 W. Va. 585, syl. points 8 & 12, reaffirmed. (p. 420).

Appeal from Circuit Court, Wood County.

Bill by J. Ross Timms, Jr., against John D. Timms and others. Decree for plaintiff and defendant Monroe Uhl appeals.

*Affirmed.*

McCLUER & McCLUER, for appellant.

HUNTER H. MOSS, JR., for appellees.

McWHORTER, PRESIDENT:

John D. Timms and J. Ross Timms, Jr., his brother, were partners under the firm name of John D. Timms and Bro., in the insurance business, at Parkersburg for some two years or more. On the first day of January, 1901, they dissolved their partnership. By the terms of the dissolution J. D. Timms assumed all the obligations of the firm and gave his note to J. Ross Timms, Jr. for $200 payable in one year and also assumed to pay a note for $620 given by said J. Ross Timms, Jr. to J. D. Timms and which had been discounted by J. D. Timms in the Citizen's National Bank at Parkersburg, and all accounts due the firm were to be collected by J. D. Timms. J. D. Timms was the owner of a lot 40x100 feet fronting on Spring street in the city of Parkersburg upon which there was a house, which premises were occupied by himself and family as a residence. On the 18th day of June, 1901, John D. Timms and Emma M. Timms, his wife, conveyed said property to Monroe Uhl, the brother of said Emma M. Timms, in consideration of $1,900.00 to be paid as follows:

The grantee assumed the payment of a balance of $665.70 due from the said John D. Timms on a deed of trust made by said Timms and his wife to secure a loan to the Citizen's Building Association dated the 30th of April, 1898; also a promissory negotiable note for the sum of $175 dated January 24, 1901, payable ninety days after its date, to the order of said Uhl at the Citizen's National Bank of Parkersburg; also a negotiable note dated February 18, 1901, for $400 payable sixty days after its date at the same bank to the order of said Uhl; another negotiable note payable at the same bank for $200 to the order of C. M. Uhl, ninety days after its date; also another negotiable note dated April 25, 1901, for $225 payable to the order of M. Uhl at the same bank, sixty days after its date; also another note dated the 13th day of May, 1901, for the sum of $200, pay-

able ninety days after its date to the order of C. M. Uhl, at the same bank, and the further sum of $34.30, as near as the same could be estimated, for protests and overdue interest upon said notes.

On the 27th day of August, 1901, J. Ross Timms, Jr. sued out of the clerk's office of the circuit court of Wood County his subpœna in chancery and at the November rules of said court 1901, filed his bill against John D. Timms, *et al* for the purpose of setting aside said conveyance made by J. D. Timms and his wife to M. Uhl, dated June 18, 1901, as fraudulent and void, as being executed with the fraudulent design of delaying, hindering and defrauding the creditors of the said John D. Timms other than the said M. Uhl and giving said Uhl a preference over the other creditors of said Timms, and praying that the said deed be declared to be fraudulent and be set aside and held for naught and the property be sold and the proceeds distributed *pro rata* among all the creditors of said J. D. Timms whose claims existed at the time of said conveyance, and who should come in and unite in said suit and agree to contribute to the cost and expenses of it, and for general relief.

Hermann O. Smith, trustee of the estate of John D. Timmı in bankruptcy, filed his petition in said cause showing that on the 22nd day of November, 1901, the said John D. Timms was adjudged a bankrupt upon his own petition in voluntary bankruptcy, and praying to be made a party plaintiff in said suit and joining plaintiff in the allegations and prayer of said bill. The defendant M. Uhl filed his answer denying all the allegations of fraud against himself and all knowledge of fraud or fraudulent intent on the part of said John D. Timms in the execution of said conveyance to him and denied all knowledge of any indebtedness on the part of said John D. Timms at the time of the execution of said conveyance, except that assumed by him as·set out in the deed to be paid as the consideration for such conveyance.

Depositions were taken and filed by the plaintiff and also by the defendants. The cause was heard on the 28th of March, 1903, and the court ascertained the indebtedness of John D. Timms to the plaintiff J. Ross Timms, Jr., to be $2,088.06 and decreed the recovery thereof and further decreed the deed from John D. Timms and his wife to M. Uhl dated the 18th of June, 1901, to be fraudulent and voluntary as to said claim of plaintiff

and set the same aside as to said claim, as fraudulent and void; that there were no liens on said property by judgment or otherwise except the deed of trust to the Citizens' Building Association of Parkrsburg, and that the plaintiff, J. Ross Timms, Jr. by the filing of his bill attacking the validity of said deed acquired a lien upon said real estate mentioned and described in the deed for the amount of his claim aforesaid, which lien was second in priority to that of the said building association and decreed a sale of the said property by a special commissioner to satisfy the said two liens. From which decree the defendant M. Uhl appealed and says that the court erred in decreeing that said deed from Timms and wife to Uhl was fraudulent and voluntary; and in setting aside and nullifying and declaring the said deed void; and that there was any fraud on the part of M. Uhl connected with the making of the said deed; and in decreeing that the amounts due from John D. Timms to J. Ross Timms, Jr. constituted a lien upon the said house and lot; and in decreeing that the said conveyance was voluntary "As the records show that the sum of $1,900 was paid for this property and the evidence is conclusive that that sum was a fair valuation for the property."

It is contended by appellee that the conveyance from Timms to Uhl was fraudulent in law and in fact. In Wait on Fraudulent Conveyances, section 225 it is said: "Badges of fraud are suspicious circumstances that overhang a transaction, or appear on the face of the papers. The possible *indicia* of fraud are so numerous that no court could pretend to anticipate and catalog them. A single one may stamp the transaction as fraudulent, and when several are found in combination, strong and clear evidence on the part of the upholder of the transaction will be required to repel the conclusion of fraud." It will be observed on examination of the deed, which is one of general warranty, conveying the house and lot of John D. Timms to M. Uhl there was no money consideration passed directly from Uhl to Timms, but simply the assumption by Uhl to pay off the lien due to the building association, amounting to $665 and the payment of certain notes owing by said Timms and described in the deed, the greater amount of which Uhl was already liable for as endorser for Timms and the most of which were past due lying in the bank under protest, and no provision was made either by vendor's

lien retained in the deed or otherwise to secure the payment of said notes; no part of the consideration being secured except the lien due to the building association which was secured by virtue of the deed of trust which secured the original loan of $1,100.00 which had been reduced by payments to $665. This transaction on the face of the deed, placed the property in position to have been conveyed by Uhl, to an innocent purchaser without notice, beyond the reach of any of the unsecured creditors of said Timms. The purchaser Uhl, must have known that his grantor was in failing circumstances, although in his answer as well as his testimony he claims to have had no information of his insolvency and made no inquiry whatever as to his indebtedness or financial condition yet he states that always theretofore the said John D. Timms had taken up his paper promptly by payment or renewal, and further admitted that several of the notes had been protested and were long past due and the bank had given him notice that the said notes must be taken care of; when he called the attention of Timms to the fact that the notes were pressing him Timms proposed to sell him the property and asked him $2,400 or $2,500 for it but sold it to him at $1,900, the price stated in the deed. Uhl says he made no inquiry as to any other indebtedness of the said Timms but only purchased the property for the purpose of saving himself and his brother who was endorser on a part of the paper assumed by him. In *Bartles* v. *Gibson,* 17 Fed. Rep. page 293, (syl. pt. 2), it is held: "Where the grantee in a deed made to defraud the creditors of the grantor, knows of the fraudulent intent of the grantor, or has notice of facts sufficient to excite the suspicions of a prudent man and put him on inquiry he makes himself a party to the fraud." The fraudulent intent of John D. Timms is not seriously denied and indeed the evidence taken as a whole clearly shows that his purpose in making the conveyance was to hinder, delay and defraud his creditors or some of them. In his testimony he says that Uhl might have known of other indtedness of his than that mentioned in the deed and assumed by Uhl. It seems almost incrediable that a man of Uhl's evident intelligence and prudence would not have inquired of his brother-in-law who had so far failed as to be unable to take care of his commercial paper, either by payment or renewal, as to his other indebtedness and the cause of his

failing condition; surely his condition was sufficient to put Uhl upon inquiry. It is said in Wait on Fraudulent Conveyances, section 239: "Indebtedness or hopeless insolvency is, however, an important element of proof in marshalling badges of fraud to overturn a covinous transaction. * * * The conveyance, to be fraudulent, should bear such a ratio to the indebtedness as to tend directly to defeat the claims of creditors. It is not necessary that the conveyance should leave the grantor entirely without property but the amount transferred and the part retained are all circumstances to be weighed. A heavy indebtedness of the grantor together with a sale to a relative of necessity form strong badges or indications of collusion and fraud, but are not in themselves, unsupported, by other material facts, deemed conclusive proof of fraud."

In case at bar it is conceded that Timms conveyed all the estate he had to Uhl. As held in *Reilly* v. *Barr*, 34 W. Va. 95: "Where a conveyance has been made to a relative and such conveyance is impeached by the creditors of the vendor as having been made with intent to hinder, delay and defraud them in the collection of their debts the vendee relative will be held to stricter proof of the *bona fides* of the transaction than a stranger would be." See *Hutchinson* v. *Boltz*, 35 W. Va. 754, (syl. pt. 4).

Another very suspicious circumstance connected with the transaction is the fact that the vendor was permitted to continue to occupy the premises in sole possession and without payment of rent and was authorized by Uhl to sell the same, and his wife who was the sister of the vendee was to have all the proceeds of such sale above the amount promised to be paid by the vendee, the $1,900. Timms tried to sell the property, representing it as his own and made a contract of sale, in writing, signed by himself to one Leslie M. Sorrell. Although the contract had been mislaid or destroyed it was well established that it was executed. Sorrell testified that Timms asked $2,700.00 in the first place and came down to $2,500.00 or $2,550.00, he was not sure which, but it was $2,500.00 or over. This contract, he thinks, was made about the 15th of August, 1901. While the deed was put on record on the day it was executed yet Timms and his wife on the next day after the execution of the deed in an interview with the plaintiff gave him no intimation that they had conveyed the property but he says they told him they intended to sell it in the

future, leaving him to infer that they still owned it. He further states that on that day, the 19th of June, when he had the convarsation, "They were trying to figure out how much John D. Timms was in debt and how much he had paid out and what he had paid it with, and he put the price on his property, he said he could get $3.000.00 for it." Mrs. Timms denies having such conversation but John D. Timms in his testimony makes no reference to it, by denial or otherwise. In *Livesay* v. *Beard*, 22 W. Va. 585, (syl. pts. 8 and 12, it is held: "8—Where after an absolute conveyance of real estate by a debtor in failing circumstances he remains in possession of the land without contract and without accounting for the use of the land, these facts are evidence of fraudulent intent in such conveyance."

"12—A deed fraudulent in fact is void *in toto* and cannot stand as security for grantees who have notice of the fraud." See also, *Curd* v. *Miller*, 7 Grat. 185; *Peck* v. *Land*, 2 Ga. 1; *Perkins* v. *Patten*, 10 Ga. 241; *Davis* v. *Turner*, 4 Grat. 422; *King* v. *Moon*, 42 Mo. 551.

In *Sibly* v. *Stacey*, 44 S. E. 420, it is held: "Where the evidence relating to fraud is conflicting and tends to support the decree of the circuit court, such decree will not be disturbed, unless plainly wrong."

As to the evidence touching the inadequacy of the price mentioned in the deed to Uhl, $1,900.00 for the property, it is somewhat conflicting, and as to the estimate or price put upon it by the witnesses, the evidence that $1,900.00 was an adequate price preponderates to some extent; yet it would seem that the amount for which it was actually sold or contracted in good faith—and there seems to be no question about the contract to Sorrell by Timms for the property at the price of $2,500.00 or $2,600.00 being made in good faith; that such sale or contract actually made—would outweigh all expert testimony as to the value of the property given as the opinion of the witnesses, and this sale was made within two months after the date of the deed from Timms to Uhl, and there is nothing in the record to show that there was any material advance in real estate in that time.

There is no error in the decree and the same must be affirmed.

*Affirmed.*