# CHARLESTON.

## MAXWELL v. WILSON.

Submitted September 10, 1903—Decided December 16, 1903.

1. DEEDS—*Covenants—General Warranty.*
   A covenant of general warranty in a deed for land relates to title, not quantity, and does not warrant quantity, *Burbridge* v. *Sadler,* 46 W. Va. 39, (syl. pt. 6). (p. 500).

2. DEFICIENCY IN QUANTITY—*Remedy at Law.*

A claim for compensation for deficiency in quantity of land conveyed by deed, where the purchase money has been paid, is a mere personal demand, not cognizable only in equity, but in law, and is subject to the Statute of Limitations. *Burbridge* v. *Sadler,* 46 W. Va. 39, (syl. pt. 4).

3. LIMITATIONS—*Equity.*

In a chancery cause for the enforcement of a legal claim where a court of law and a court of equity have concurrent jurisdiction, the statute of limitation will be given effect upon demurrer when it plainly appears on the face of the bill that the statute applies in the case.

Appeal from Circuit Court, Randolph County.

Bill by W. B. Maxwell against Allen L. Wilson and others. Decree for plaintiff, and defendant Allen L. Wilson appeals.

*Reversed.*

HARDING & HARDING, for appellant.

STRADER & STRADER and E. D. TALBOTT for appellee.

McWHORTER, PRESIDENT:

By deed dated the 22d day of May, 1899, Allen L. Wilson and Emma J., his wife, "In consideration of eight dollars per acre for the land hereinafter described amounting to the sum of $1,952, paid and to be paid as follows:" One third cash and the residue in two equal payments at one and two years with interest from date, secured by vendor's lien conveyed to W. B. Maxwell a tract of land lying in Randolph county described by metes and bounds and as containing two hundred and forty-four acres with covenants of general warranty. The deferred payments of purchase money were paid by the vendee as they fell due, the last payment being made about the 22d of May, 1891. On the 13th day of October, 1898, W. B. Maxwell sued out of the clerk's office of the circuit court of Randolph county his subpoena in chancery and at the November rules 1898, filed his bill in equity against Allen L. Wilson, W. A. Wilson and the United States Coal, Iron and Manufacturing Co., alleging the purchase by plaintiff from the defendant Allen L. Wilson of the said tract of two hundred and forty-four acres of land at the price of $8.00 per acre, exhibiting a copy of the

deed with his bill; that after the purchase plaintiff took pos-
session of the land and had had possession of it ever since;
that plaintiff relied with absolute confidence upon the represen-
tations of Wilson as to the quantity of land in said tract and
did not incur the expense of having the same surveyed; that
at the time of purchasing, the land had a large prospective
value on account of the coal, building stone, ballast stone, and
timber thereon if a railroad should be built upon or near the
same and plaintiff had confidence that such road would be
built soon thereafter, and that such had been built through the
land realizing what the plaintiff believed was its prospective
value, and it had become fairly of the value of $30.00 per acre;
that about the 22d of January, 1896, plaintiff sold the timber on
said land at the price of $1,000, but the purchaser of the timber
discovered a large deficiency in the acreage of said tract and re-
fused to pay the whole of the purchase money for the timber,
and plaintiff by the advice of counsel gave to the purchaser a
large abatement upon the price of the contract to be paid and
incurred a large amount of costs and expenses in vindicating his
title, in which ways he suffered in the aggregate a loss of about
$200.00, all of which was incurred by reason of the false and
fraudulent misrepresentations of said Wilson as to the quantity
of said land; that afterward at a large expense plaintiff caused
Charles M. Marstiller, the surveyor of Randolph county to go
upon the land and make an accurate survey thereof, when it was
found to contain but one hundred, seventy-seven and one-half
acres, being a shortage of sixty six and one-half acres, making an
aggregate of $532 exclusive of interest overpaid for the land
by plaintiff; that before plaintiff knew there was a shortage in
the land he had sold a large amount of building rock therefrom,
and all the timber and a right-of-way for a railroad through the
land so that he was in no position to insist upon or consent to a
rescission of his contract; that he had discovered some time
about the —— day of ——— 1897, that there was probably a
shortage in the acreage of said land and did not even have an
intimation before that time that there was a shortage; that as
soon as he ascertained it he called the attention of Wilson to
the fact, but he failed and refused to reimburse him for the
loss; that Wilson was the owner of another tract of one hun-
dred and eighty-five acres in the same district in Randolph

county, and on the 9th of February, 1898, said Wilson for the purpose of hindering, delaying and defrauding his creditors and especially the plaintiff, pretended to sell and convey, the hundred and eighty-five acres to the defendant W. A. Wilson, for the pretended consideration of $6,500 in cash; that W. A. Wilson was a very young man, never had any such amount of money or means of any considerable amount; that he was the nephew of said Allen L. Wilson and had full notice and knowledge of the fraudulent intent and purpose of said Allen L. Wilson, when he accepted such deed and did not pay any fair consideration for said land, and participated with his grantor in his fraudulent design and purpose; that Allen L. Wilson was not the owner of any other real estate and had practically no personal property so that plaintiff was remediless to recover the amount justly due him upon the breach of warranty of said Allen L. Wilson, except out of the proceeds of the sale of the said hundred and eighty-fie acre tract; that while Archibald Wilson was the owner of said hundred and eighty-five acres on or about the 19th of November, 1872, he leased and sold the coal thereon and the right to remove it, at a royalty of ten cents per ton to one Isaac Carpenter; that by successive alienations thereof the said lease passed into the hands of the defendant United States Coal, Iron and Manufacturing Company, which was the owner of the same, but had not mined and removed any of the coal and was entitled to do so; that the said hundred and eighty-five acres would not rent for enough in five years to satisfy plaintiff's claim and that no part of the claim had ever been paid and prayed that the amount legally and justly due him from said Allen L. Wilson be ascertained and that the said deed to W. A. Wilson be set aside and canceled as having been executed for the purpose of delaying, hindering, and defrauding plaintiff and the hundred and eighty-five acres be sold and the proceeds applied to the payment and satisfaction of. the amount due plaintiff and for general and special relief. The bill also exhibits as a part thereof the deed for the hundred and eighty-five acres to W. A. Wilson and the contract of lease or sale of the coal therein.

The defendant Allen L. Wilson, filed his demurrer to plaintiff's bill and says that the bill shows upon its face no grounds for equitable relief; that the bill is multifarious; that the bill

and exhibits filed therewith show that the plaintiff has been guilty of such *laches* and will defeat his claims of relief and "because the plaintiff's demand is purely legal and was barred by the statute of limitations at the time of the bringing of this suit, and said defendant now here gives the plaintiff notice that he will rely on said statute to defeat his demand as fully as though he had especially pleaded it in this cause." The said Allen L. Wilson and W. A. Wilson filed their several and separate answers to the bill, to which plaintiff replied generally.

The answers denied all fraud or intention to defraud. Allen L. Wilson also denied all material allegations of the bill. Depositions were taken and filed by both plaintiff and defendants. The cause came on to be heard on the 17th of October, 1902, and the court held that the deed of conveyance made the 9th of February, 1898, from Allen L. Wilson to defendant, W. A. Wilson, for the hundred and eighty-five acres was made for the purpose of hindering, delaying, and defrauding the plaintiff in the enforcement of his claim, and set aside, annulled and canceled said deed and held that the plaintiff was entitled to recover from the defendant, Allen L. Wilson, the value of the deficiency, sixty-five and one-half acres, at $8.00 per acre or such deficiency, with interest thereon from the time it was paid for and the cost and expenses plaintiff was compelled to pay in vindicating his title to the land, if he paid such costs or incurred any such expenses and referred the cause to one of the commissioners of the court to ascertain and report the amount plaintiff was entitled to recover and also to ascertain and report the liens upon the hundred and eighty-five acres of land, and amounts and priorities thereof and the state and condition of the title to said hundred and eighty-five acres. On the 20th of October, the court made an order setting forth that on a former day of the same term the court had entered the demurrer of Allen L. Wilson to plaintiff's bill and had overruled the same. The commissioner filed his report ascertaining the amount to be due from defendant Allen L. Wilson to the plaintiff $1,064.96 and that the same was a lien upon the hundred and eighty-five acres of land and reported that no other liens had been presented to him. The defendant, Allen L. Wilson, excepted to the report because "It reports that there is due from him to the plaintiff on account of a deficiency in the acreage of the land and pro-

ceedings thereabout, the sum of $1,064.96, or any part thereof or any other sum, because he owes said plaintiff nothing by reason of the premises." And defendant, W. A. Wilson excepted because it reported said sum as a lien upon his land. The cause was finally heard on the 6th day of May, 1903, when the court overruled the exceptions to the commissioners report and confirmed the report and decreed the sale by commissioners of said hundred and eighty-five acres of land to pay said claim. Defendant Allen L. Wilson, appealed from said decrees of October 17, 1902, and May 6, 1903.

The first and second assignments of error are that the court erred in not sustaining defendant's demurrer to plaintiff's bill, and also in not dismissing said bill upon the pleadings, proofs, and the hearing thereof.

I deem it unnecessary to take any account of the remaining assignments of error; that the court erred in decreeing to plaintiff the sum decreed on account of the supposed deficiency in the said land and in not sustaining defendant's exceptions to the commissioner's report as in my view of the case the cause is disposed of upon the demurrer. It is well settled that the statute of limitations will be given effect upon demurrer when it plainly appears upon the face of the bill that the statute may be applied in the case. The deed from Wilson to plaintiff dates May 22, 1889; the last payment of purchase money was made two years thereafter, May, 1891; this suit was brought to recover for the alleged deficiency, October 13, 1898, more than seven years after the date of the deed.

In *Burbridge* v. *Sadler,* 46 W. Va. 39 (syl. pt. 6), it is held: "A covenant of general warranty in a deed for land relates to title, not quantity, and does not warrant quantity." "It has been conclusively settled that covenants for title do not extend to the quantity of land conveyed unless such clearly appears to be the intention;" Rawle on Cov. 289. And in section 297: "And where land is conveyed by a particular description and with an enumeration of the quantity of acres, the latter is held to be matter of description merely, and cannot be deemed an implied covenant for quantity. As therefore the descriptive boundaries curtail the quantity it has been repeatedly held that the covenants for title apply to the premises contained within those boundaries, and not to any enumeration of acres. *Perkins* v.

*Webster,* 2 N. H. 287; *Large* v. *Penn,* 6 Serg· & Rawle (Pa.) 488; *Snow* v. *Chapman,* 1 Root (Com.) 528, and many other cases there cited. It is further said in the same last mentioned section: "Of course, however, this rule will not apply where on the face of the instrument it appears that the covenants were directly intended to assure a particular quantity to the purchaser." As in a late case decided by this Court, *Sibley* v. *Stacey,* 44 S. E. 420, where the deed conveyed certain trees describing them as to kind, number, size, etc., "marked thus, 'K.' now sound and growing upon the lands of the grantor" etc., it was held to import a covenant or warranty that such trees existed of the kind and character named, as the language used was not a mere descriptive recital but was the essence of the conveyance. And that on such covenant or warranty a suit might be maintained for a deficiency in the number of trees conveyed within ten years from the date of the conveyance. Here the definite number of each and every kind of tree by actual count was given, nothing contingent on calculation but the trees counted and designated by a peculiar mark for identification, and the deed contained a further covenant that the vendor would "protect and take care of said timber as long as it may remain upon said premise," and as stated in the opinion "thus virtually retaining dominion over the property until possession thereof is taken by the grantee." This was properly held to be a warranty by implication of the number of trees as well as the title thereto.

In *Rickets* v. *Diskens,* (N. C.) 4 Am. Dec. 555, it is held, that "The words of a deed describing the length of lines and boundaries, etc., and concluding with the words 'containing so many acres' do not import a warrant of quantity." In section 1044, 2 Dev. on Deeds, it is said: "In the description of land it is usual, after the description by metes and bounds or subdivisions, to add a clause stating that the land described contains so many acres. But unless there is an express covenant that there is the quantity of land mentioned, the clause as to the quantity is considered simply as a part of the description, and will be rejected if it is inconsistent with the actual area when the same is capable of being ascertained by monuments and boundaries. The mention of the quantity of land conveyed may aid in defining the premises but it cannot control the rest of

the description." In *Pecare* v. *Chouteau,* 13 Mo. 528, it is said in the opinion: "The cases in which quantity has been held mere matter of description, are cases where the specific tract conveyed was fixed by metes and bounds or by numbers, or in some other way so determined as to place beyond doubt what tract was conveyed." In *Chrislip* v. *Cain,* 19 W. Va. 438, in syllabus point 18, it is held: "The specification (in a written contract to convey or in a deed conveying) of the quantity exactly without the addition of the words 'more or less,' or any other qualifying words, renders the deed or contract ambiguous as to whether the parties did or did not intend, that the vendor by such positive affirmation of quantity, should be regarded as making a warranty, that there was this quantity." In *Burbridge* v. *Sadler,* cited, (syl. pt. 4), it is held: "A claim for compensation for deficiency in quantity of land conveyed by deed, where the purchase money has been paid, is a mere personal demand, not cognizable only in equity, but at law, and is subject to the statute of limitations." And in *Sibley* v. *Stacey,* cited, (syl. pt. 1), it is held: "A legal demand sued on in equity is subject to the statute of limitations, and not *laches.*" The demurrer to the bill should have been sustained.

The decree is reversed, the demurrer to the bill sustained and the bill dismissed.

*Reversed.*