(59 App. Div. 150.)

## SEITZ v. SEITZ.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

1. ACCOUNTING—FRAUD—LIMITATIONS OF ACTIONS.

For 18 years plaintiff had loaned money on the advice of his son, the defendant. The business was transacted by defendant, but in each transaction plaintiff was consulted. Defendant had fully accounted for all moneys handled by him during the six years next preceding the action for an accounting, but plaintiff claimed that from 15 to 12 years prior to the action the defendant had received profits on investment of plaintiff's funds which were not accounted for. Defendant had not taken title in his own name to any property in which plaintiff's funds were invested, and there was no express trust. *Held*, that if there was any trust it was a constructive one, and the action was barred by limitations in six years from the time the wrong was committed.

2. SAME.

Where an action is brought for an accounting by defendant for moneys which have been invested by him for the plaintiff, the action is not one for fraud, within the exception of Code Civ. Proc. § 382, subd. 5, providing that, in an action to recover on the ground of fraud, the cause of action is not deemed to have accrued until the discovery by plaintiff of the facts constituting the fraud.

Appeal from special term, Kings county.

Action by Frederick Seitz against Louis F. Seitz. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-BERG, JENKS, and SEWELL, JJ.

John C. McGuire, for appellant.

William G. Cooke, for respondent.

JENKS, J. The plaintiff appeals from a judgment of the special term dismissing his complaint. On January 5, 1899, he began this action against his son for an accounting, for judgment for any money found due thereon, and to declare a lien therefor upon certain realty of the defendant. In 1881 the plaintiff was a lithographer, and the defendant was a clerk in the office of Wilson, a wool merchant in New York City. Upon the suggestion of the son, the father began to put out, in his own name, his money at interest with Wilson, in September, 1881. The account ran until 1889, and for a time within such period a similar account was opened with Mauger & Avery, wool merchants, who occupied the office with Wilson. From January, 1882, until May, 1889, the defendant also had an account with Wilson. The deposits of the plaintiff were almost invariably made by the defendant. During the period of his said account, the plaintiff ventured upon real-estate transactions in New York City, largely upon the counsel of his son, who managed the affairs. The last piece of property in New York City was sold in August, 1889, and at that time it appears that the plaintiff owned, in mortgages and in moneys

to his credit with Wilson ($9,264), about $20,000. In June, 1888, the plaintiff began to buy and to trade Brooklyn realty, and to build thereon, through the defendant and upon his advice. The defendant at the same time was engaged in similar transactions on his own account. In 1892 the plaintiff was and still is the owner of an apartment house in Brooklyn. The defendant also owned and owns certain apartment houses in Brooklyn, and upon one of them the plaintiff seeks to fasten the lien of any judgment awarded to him in the accounting prayed for. The contention of the plaintiff, briefly stated, is that the defendant has used moneys of the plaintiff, and the fruits thereof are to be found in the realty in question. The long record before us is the history of the dealings of these parties throughout many years. The case was thoroughly tried by very able counsel, and the findings and conclusions are the work of a patient, acute, and learned trial justice, who has found that the defendant has fairly accounted for all of plaintiff's moneys and property received or intrusted to him since the 1st day of July, 1889. I think that his finding is fully warranted by the evidence.

Further discussion, then, is limited to the transactions between the parties prior to July 1, 1889. The special term found that between the 1st day of December, 1881, and the 31st day of December, 1888, the defendant deposited with said Wilson divers large sums of money belonging to the plaintiff; that numerous large sums were from time to time drawn from the funds so deposited; that a portion of the money drawn was used to purchase real estate for the plaintiff; that a portion deposited was the proceeds of sales of real estate owned by the plaintiff; and that the defendant, to a great extent, managed such real-estate transactions; but that all such transactions were made after consultation with the plaintiff and by his consent. It also found that between July 1 and November 2, 1887, the defendant received the sum of $6,000 of the money of the plaintiff so deposited with Wilson. The learned trial justice (Mr. Justice Wilmot M. Smith) did not further find upon this branch of the case, and states that he does not express opinion as to the merits of the plaintiff's claim that the defendant had not fully accounted for all moneys involved prior to July 1, 1887, for the reason that the statute of limitations applies. Putting aside consideration of the facts which the learned counsel for the defendant insists establish that the transactions of the defendant were wholly clean, I consider whether the law was rightly applied.

The theory of the plaintiff is that there was a trust, in that the plaintiff placed great confidence in his son's judgment and advice, and largely committed the venture to his management. There was no express trust. There was no breach of confidence or of good faith in any agreements touching any of the joint enterprises. It is not shown that the defendant took title to any realty in his own name under agreement subsequently to convey to the plaintiff, or that he bought realty in his own name with funds intrusted to him to buy realty for the plaintiff, and therefore that the principle of Wood v. Rabe, 96 N. Y. 414, and of Goldsmith v. Goldsmith, 145 N. Y. 313, 39 N. E. 1067, does not apply. The son had no general au-

thority touching the investments in real estate and the sales thereof made for the father. Indeed, he advised with the plaintiff, and obtained his preliminary consent to them. The complaint is that there were secret peculations of money whereby the son could the more contribute to the joint ventures, from the profits of which the son ultimately could the more speculate for himself. There was no authority vested in the son as to the moneys given to him, save to deposit them with Wilson. If he failed to deposit them, or surreptitiously withdrew them from the account without authority, he committed, in each instance, an act of conversion. Laverty v. Snethen, 68 N. Y. 522. If there be any trust, it is such as is constructive, ex maleficio, or ex delicto. Such a trust is not constructed out of the original relation between the parties, but to enable equity to deal fully with the fraud that it abhors, and to follow, as far as it can, the proceeds and profits of dishonest dealing. Pom. Eq. Jur. § 1030; Wheeler v. Reynolds, 66 N. Y. 227, 236, et seq.; Mills v. Mills, 115 N. Y. 80, 86, 21 N. E. 714; Sugar Refining Co. v. Fancher, 145 N. Y. 552, 558, 40 N. E. 206, 27 L. R. A. 757. And the term "trust" is used in that the owner can invoke the same remedies against the holder of the legal title as are open to the beneficiary under a true trust. Pom. Eq. Jur. § 1053. The charge of the plaintiff is that the defendant was honest in his dealing with the deposits up to May, 1884, but that almost immediately thereafter the wrongdoing began. But, as to a trust ex maleficio, the statute begins to run from the time when the wrong was committed by which the party becomes chargeable. Lammer v. Stoddard, 103 N. Y. 672, 673, 9 N. E. 328, and authorities cited; Kane v. Bloodgood, 7 Johns. Ch. 90; Mills v. Mills, supra; Burt v. Myers, 37 Hun, 277. The theory of this action is that an accounting is due from the defendant to the plaintiff. Therefore it does not fall within the exception contained in subdivision 5 of section 382 of the Code of Civil Procedure, inasmuch as this is not an action on the ground of fraud. Carr v. Thompson, 87 N. Y. 160, 164. If, as the learned counsel for the appellant contends, the transactions constituted a continuous or running account, the account seems to have been closed in October, 1892. The plaintiff would seek to continue them by the isolated payment made in 1895 by the defendant to one Holler for a balance due upon a carpenter's bill for work done on the apartment house of the plaintiff. This involves a question of veracity between the parties, for the plaintiff testifies that it was paid upon his direction by the defendant out of plaintiff's moneys in possession of the defendant, and the defendant testifies that he made the payment as an accommodation to his father because it had been due for two years, and Holler was pressing for his money. The plaintiff's theory of this payment is embodied in his twenty-ninth request to find, which was refused by the learned court.

The judgment should be affirmed, with costs. All concur, except SEWELL, J., taking no part.