# CHARLESTON.

## NEWMAN *v.* RUBY.

Submitted June 16, 1903—Decided December 12, 1903.

54 381
e 60 256

54 381·
f65 36

1. SUBSCRIPTION—*Joint Ownership—Rights and Liabilities.*

T., as agent of F. & C., presented to R. a written contract for the purchase of a stallion at the price of eighteen hundred dollars, which specified that those who should execute the contract and join in the purchase of the horse should, after the purchase, own interest therein by shares of one hundred dollars each, the interest of each party to be determined by the number of shares for which he should subscribe. R. signed it, subscribing for two shares, and delivered it to T., upon the verbally expressed condition that it should not be effective as to him, unless M. & W. should sign it, and, they refusing to join in the enterprise, T. obtained the signatures of fifteen other per-

sons who took the remaining sixteen shares, and executed and delivered to T. two negotiable notes for the sum of nine hundred dollars each, without notice of the condition upon which R. had signed, and F. & C. delivered the horse at R's. stable, and endorsed and delivered one of the notes to a stranger, without having obtained R's. signature thereto, and without the knowledge of the other parties to the contract, who afterwards paid it and then instituted an action to recover from R. one-ninth of the sum so paid, proving the additional fact that, after the contract had been completed and shown to R., he expressed approval therefor. *Held,* That they may recover in an action at law. (p. 384).

2.  Partnership—*Action at Law.*
   A partner who has paid into the capital of the firm, the amount which his co-partner had bound himself to pay, may recover it from the latter in an action at law, as money paid for his use, no adjustment of the partnership accounts being necessary to a determination of the case on its merits.  (p. 386).

Error to Circuit Court, Wetzel County.

Action by B. B. Newman and others against A. C. Ruby. Judgment for plaintiffs, and defendant brings error.

*Affirmed.*

J. W. McIntire and B. T. Bowers, for plaintiff in error.

Cornett & Newman and T. P. Jacobs, for defendants in error.

Poffenbarger, Judge:

This is a writ of error to a judgment for $111.83, rendered by the circuit court of Wetzel County, in an action commenced before a justice of the peace, which was carried up to the circuit court by appeal. The principal sum recovered is one hundred dollars, which the fifteen plaintiffs claim to have paid for the use of the defendant, A. C. Ruby, as a part of the sum which he agreed to contribute in a partnership, or joint ownership, venture, in respect to the purchase and handling of a stallion in 1898. At that time, one Tracy, an agent of Fletcher & Coleman, of Wayne, Illinois, brought to New Martinsville a Percheron horse which he proposed to sell for the sum of eighteen hundred dollars, and began his negotiations with the defendant Ruby. He had a printed form of contract which

Ruby signed, with the understanding that it was to be signed by John McMunn and John Witten. Tracy took the paper with Ruby's signature on it and obtained the signatures of fifteen other persons, but McMunn and Witten did not sign it. The parties who did sign it after Ruby do not appear to have had any notice of the agreement under which he executed the paper.

No copy of this paper appears in the record, the paper itself having been misplaced before the action was brought. Evidence of its contents was given. Some two or three of the plaintiffs testified that it fixed the price of the horse at eighteen hundred dollars, for which two notes of nine hundred dollars each were to be executed by the parties signing it, and that it specified the interest each signer was to have in the horse, and the amount which he bound himself to contribute to the undertaking, by making the shares one hundred dollars each. They also testified that the paper had on it Ruby's subscription to two shares, when they signed it. After the other sixteen shares were made up, two nine hundred dollar notes, both negotiable, were executed by all the parties except Ruby, he not being present at the time, and they supposing that he would sign them. He did not, however, and the first note was endorsed by the payees and passed into the hands of Joseph Probst. Ruby denies that any of the blanks in the printed form were filled up at the time he signed it and also that he subscribed for any number of shares. He further claims that he repudiated the whole matter and announced that he would have nothing to do with it, because McMunn and Witten had not joined him in the enterprise, and he had not authorized Tracy to obtain the signatures of the persons who did sign. He is, to some extent, corroborated by other witnesses. But G. B. Woodcock, B. B. Newman, Louis Dulaney and Jacob Yoho, all parties to the transaction, testified positively and fully, not only that they had no notice of Ruby's repudiation and refusal to go on with the undertaking until after the notes had been executed and delivered, but also to several admissions in different forms on the part of Ruby, and conduct on his part well calculated to lead them to believe the contrary.

At the maturity of the first note, it was paid by the makers and then this suit was brought to recover from Ruby said sum of one hundred dollars, his proportion of the amount paid.

That the paper was in the form in which the witnesses for the

plaintiffs say it was, and bore the subscription of Ruby to two shares, and that none of the plaintiffs had notice of the agreement under which he subscribed until after the note had been made and delivered, are facts so well supported by evidence that the finding in reference thereto by the court below cannot be disturbed. The same is undoubtedly true as to Ruby's acquiescence for a short time after this transaction. Woodcock testified that, after the contract was signed up by all the parties, it was shown to Ruby and he expressed himself as being perfectly satisfied, and that, when they went to organize the company, he said it was impossible for him to go, but that they might go on and organize and he would be satisfied with whatever they did, and that, after the organization was effectuated, and he was informed as to who the officers were and what had been done, he expressed himself as being well pleased. Ruby denies this, but the circuit court has found against him.

By signing the contract and delivering it to Tracy to obtain other signatures sufficient to make up the eighteen hundred dollars at one hundred dollars per share, without anything on the paper to indicate what parties were to join him in the enterprise, or that his subscription was conditional, Ruby placed himself in a situation similar to that of one who signs a bond or other obligation upon condition that certain other persons shall sign it before it shall become effective as to him. The paper he signed was not only an obligation to Fletcher & Coleman, but a contract of co-partnership or joint ownership with such persons as might thereafter subscribe for the remaining sixteen shares. The subscribers for these sixteen shares, relying upon his subscription, and without any notice that it was conditional, executed a negotiable note, whereby they placed themselves almost in the same situation as if they had parted with eighteen hundred dollars cash, two hundred dollars of which was on the faith of his signature. Had Ruby signed a note, upon such condition, and it had passed into the hands of a stranger, for valuable consideration without notice of the condition, he would be absolutely bound. The principle involved here is exactly the same.

"A bond which is a complete and perfect instrument on its face at the time of its delivery to the obligee, was executed by persons as sureties, upon the condition that it should not be de-

livered until executed by other persons, and it was placed in the
hands of the principal obligor, and without being so executed
it was delivered by the obligor to the obligee, who was not in-
formed of the condition. The bond is the valid bond of the sure-
ties, and they cannot set up the condition against the obligee."
*Nash* v. *Fugate*, 24 Grat. 202; *Nash* v. *Fugate*, 32 Grat. 595.
To the same effect see *Miller* v. *Fletcher*, 27 Grat. 403; *Lyttle*
v. *Cozad*, 21 W. Va. 183; *Webb* v. *Baird*, 27 Ind. 368, (89 Am.
Dec. 507); *Cutler* v. *Roberts*, 7 Neb. 4, (29 Am. Rep. 371).

But aside from this principle, it was competent for Ruby to
waive that condition, and there was evidence that he did waive
it, by looking over the contract after it had been completed, ex-
pressing his satisfaction with it, and encouraging, at least one
of the parties to go on and organize the company, as it was
called, under it. He denies this, but, as stated, the court has
found against him and the evidence against him is as strong as
the evidence in his favor. Hence, under the rule, this Court
cannot disturb the finding. *Board* v. *Parsons*, 24 W. Va. 551;
*Lewis* v. *Alkire*, 32 W. Va. 504; *Hysell* v. *Coal Co.*, 46 W. Va.
158; *Englerth & Rowland* v. *Kellar*, 50 W. Va. 259. His con-
dition is even worse than that. The case was tried by the court
in lieu of a jury, and is regarded as standing upon a demurrer
to the evidence, considering the plaintiff in error as demurrant.
*Board* v. *Parsons*, 24 W. Va. 551; *Claflin* v. *Steenboch*, 18
Grat. 842; *Lewis* v. *Alkire*, 32 W. Va. 504; *Black* v. *Thomas*
21 W. Va. 713. By demurring to the evidence, he has admitted,
in favor of the demurrees, all inferences of fact that may be
fairly deduced from the evidence. *Mapel* v. *John*, 42 W. Va.
30; *Talbot* v. *Railroad Co.* 42 W. Va. 561; *Garrett* v. *Ramsey*,
26 W. Va. 345; *Gunn* v. *Railroad Co.*, 42 W. Va. 676; *Lewis*
v. *Alkire*, 32 W. Va. 504.

The only other objection to the judgment is, the claim that
the action involves the settlement of partnership accounts and,
therefore, presents a subject matter belonging to exclusive
equity jurisdiction, one not cognizable by a court of law. A
part of the claim set up originally in the justice's court was
open to this objection, but the circuit court eliminated it and
refused to permit the plaintiffs to take anything there except
the one hundred dollars with interest and costs. This sum is
clearly no part of the partnership account. It is a part of what

Ruby agreed to contribute as capital, and for this an action at law may be maintained. "The remedy at law for one partner against another (save by the action of account )is, in general, limited to instances where the justice of the case may be attained without the settlement of the accounts of the partnership, which a court of law, except in the action of account, has no facilities for doing, and even in that action very imperfect facilities. But where no such adjustment of the partnership accounts is requisite to reach the merits of the case, a partner may as readily sue a co-partner, in a court of law, as a stranger. Hence, upon any covenant by deed, or upon any special undertaking without deed, whether the undertaking be express or implied, an action at law may be instituted by one partner against his fellows, supposing that the covenant or special undertaking be one whereby a partner agrees with his co-partners to do a specific thing, notwithstanding it relates to the partnership— as to advance a due proportion of the capital stock, in order to its formation; to pay a certain rent for premises occupied; to pay for work done before the doer of it became a member of the firm; * * * and, in short, to do any specific thing where the particular transactions are insulated and separated from the joint account." 3 Min. Inst. Part. 2, 700; 15 Enc. Pl. & Pr., 1043; Gow on Part. 2 Ed. 86; *Manning* v. *Wadsworth,* 4 Md. 59; *Currier* v. *Webster,* 45 N. H. 226; *Glover* v. *Tuck,* 24 Wend. 153; *Morgan* v. *Nunes,* 54 Miss. 308.

"If a contract, though made concerning the partnership affairs, and in furtherance of the joint undertaking, is the individual contract of the parties who are parties to it, and if it is made by them in their own name, and not in the name of the firm, an action may be maintained thereon by one against the other, during the continuance of the partnership." *Wright* v. *Michie,* 6 Grat. 354.

From these principles, it results that the judgment must be affirmed.

*Affirmed.*