TOWNSEND et al. v. CROWNER et al.

(Supreme Court, Equity Term, Monroe County. September 28, 1910.)

1. Trusts (§ 110*)—Constructive Trusts—Descent of Property—Parol Agreement—Evidence.

    Evidence, given by friends and relatives of the heirs of a deceased wife, of conversations between her and her deceased husband and of admissions by him, all many years ago, to prove a parol agreement between them that her property should go to her next of kin, *held* not of that clear and satisfactory character required to prove such agreements, so as to warrant enforcing a trust in such property in the hands of the husband's heirs.

    [Ed. Note.—For other cases, see Trusts, Dec. Dig. § 110.*]

2. Limitation of Actions (§ 103*)—Computation of Time—Trusts—Repudiation.

    In the case of an express trust, the statute of limitations commences to run in favor of the trustee only on his open repudiation of the trust.

    [Ed. Note.—For other cases, see Limitation of Actions, Dec. Dig. § 103.*]

3. Limitation of Actions (§ 102*)—Computation of Time—Constructive Trust.

    The heirs of a wife sued the heirs of a husband to enforce a trust as to the property of the wife, on the ground of a parol agreement between them that the wife's property should go to her heirs. The wife's administrator turned over her property to the husband, and the suit was not commenced till after his death, 13 years later. *Held*, that the right of action was barred both by the 6-year and the 10-year statutes of limitations; the cause of action having accrued at once, upon his receipt of the property and failure to turn it over to the wife's heirs.

    [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 502; Dec. Dig. § 102.*]

Action by George D. Townsend and others against William E. Crowner and others. Complaint dismissed.

Frederick W. Smith (G. Fort Slocum, of counsel), for plaintiffs.
Carnahan, Adams, Jameson & Pierce, for defendant Wilbur.
McGuire & Wood, for defendant Crowner.
Edward Harris, Jr., for defendant Security Trust Co.

CLARK, J. Mathias Crowner, a widower with several children, and Jane A. Burt McFarland, a widow, were married July 20, 1875. Mrs. Crowner had no children, either by her first husband or by Mr. Crowner; but she had at that time four brothers and one sister, and their descendants or representatives are plaintiffs in this action. Mrs. Crowner died intestate January 19, 1895. An administrator was appointed of her goods, chattels, and credits, and upon the judicial settlement of her administrator's accounts in February, 1896, the personal property of Mrs. Crowner was turned over to her husband, Mathias Crowner.

In November, 1895, certain of the relatives of Mrs. Crowner, representing all branches of her family, conveyed to Mathias Crowner certain real estate which had been owned by Mr. and Mrs. Crowner as tenants in common, and in consideration of such transfers Mr.

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Crowner surrendered to his wife's relatives certain personal property consisting of mortgages, and notes against them, and which had come to him according to law on the judicial settlement of his wife's estate. Mathias Crowner died March 23, 1909, leaving a last will and testament, in which he devised the greater portion of his property to the defendants in this action; they being his children and one grandchild.

The plaintiffs bring this action for the purpose of establishing a trust, alleging that:

"Prior to the marriage of Mr. and Mrs. Crowner, they entered into an agreement whereby each promised and agreed that neither should ever have or take the property of the other, that the property of each should be kept separate and distinct from that of the other during their life, and that upon the death of either the property of the one so dying should be and become the property of the next of kin and heirs at law of such deceased, and that Mathias Crowner promised his wife that, if she did not make a will and died intestate, he would divide and distribute her property among her next of kin. *   *   * "

No writing of any kind was offered in evidence by plaintiffs tending to establish any such agreement, and it is not claimed that any writing to that effect was ever made and executed by Mr. and Mrs. Crowner; but plaintiffs seek to establish that contention by testimony of witnesses, many of whom are interested in the event of this action to such an extent that, while their evidence was not incompetent under section 829 of the Code of Civil Procedure, yet, many of them being relatives of some of the plaintiffs, it requires that their evidence be more carefully scrutinized than as though they were wholly disinterested. This applies especially to the evidence of Nelson M. Wellman, husband of one of the plaintiffs, and Cornelia A. Cranger, a cousin of some of the plaintiffs, and Albert Wellman, a son of one of the plaintiffs.

The evidence produced to establish this alleged agreement is the recollection of witnesses of conversations had between Mr. and Mrs. Crowner many years before this action was tried and admissions of Mr. Crowner which occurred from 14 to 35 years before the trial of the action; and the substance of the conversations between Mr. and Mrs. Crowner, as claimed by plaintiffs, was that, a very few days after they were married in 1875, there was a talk between them in which Mrs. Crowner said that:

"There was an agreement between her and Mr. Crowner regarding their property, that neither one of them should interfere, after the death of the other, with the other one's property, as she thought each of them had plenty, and she wanted her property to go to her nephews and nieces, and Mr. Crowner's could go where he chose, and that she did not propose to take any of his property from his children, and she said they had that agreement one with the other, in consideration that neither one of them should meddle with the other one's property."

And that Mr. Crowner spoke up and said:

"That is the way it is, Jane."

Miss Rachel True, who had lived many years in the family of Mrs. Wellman, one of the plaintiffs, testified to about the same thing, and Mary J. Gay, a friend of the Wellmans, testified that in 1890 she heard

a conversation between Mr. and Mrs. Crowner, in which Mrs. Crown-er is claimed to have said:

"Mr. Crowner and I have made an agreement that neither was to have the other's property. Mr. Crowner has children. Mine is to go to my nephews and nieces. I intend it shall."

And she testified that Mr. Crowner said:

"That is so, Jane; that is so."

Nelson Wellman also testified that he talked with Mr. Crowner at the time of Mrs. Crowner's funeral, and he stated to witness:

"I am going to do with that [Mrs. Crowner's property] just as Jane wanted me to."

Lillian C. Tibbitts, a witness for plaintiffs, and with whom Mr. Crowner had lived several years before his death, testified, among other things, that Mr. Crowner, after his wife's death, told her that Mrs. Crowner's property was to go to her family—her nieces and nephews—and that she intended that her nieces and nephews should have it.

The testimony as to this alleged agreement was the recollection of witnesses of casual conversations had many years before the trial of this action, and that applies as well to the conversations between Mr. and Mrs. Crowner, claimed to have been overheard by witnesses, as well as the alleged admissions of Mr. Crowner as to where his wife's property was to go.

In the absence of any writing showing an agreement such as is sought to be established by the plaintiffs here, the personal property of Mrs. Crowner would go to her husband, she having died intestate and without children; and it is proposed by plaintiffs, if such an agreement could be established by the testimony produced, to take this woman's property out of its natural channel, and away from her husband, and give it to her relatives, who had contributed nothing towards its accumulation. It is obvious, as to a claim of this character, where there was no writing, and where it is sought to establish an agreement which would take property out of its natural channel, that the proof to establish the agreement must be clear, convincing, and thoroughly satisfactory. Here is a case where it is sought to establish an agreement between two persons who are dead, and therefore cannot dispute it, by oral testimony of admissions and conversations which took place many years ago, and it goes without saying that such testimony should be received with great caution and subject to the strictest scrutiny, and it should be fully corroborated by evidence of disinterested witnesses; and this becomes all the more important in a case of this character, when it is understood that this claim was never sought to be enforced during the lifetime of Mr. Crowner, when he could have been heard in his own behalf.

The courts of this state have many times held that contracts of this character, unsupported by any writing, must be established, if established at all, by the clearest and most satisfactory evidence. Holt v. Tuite, 188 N. Y. 17, 80 N. E. 364; Rosseau v. Rouss, 180 N. Y. 116, 72 N. E. 916; Mahaney v. Carr, 175 N. Y. 454, 67 N. E. 903; Hamlin v. Stevens, 177 N. Y. 39, 69 N. E. 118; Ide v. Brown, 178 N. Y. 26,

70 N. E. 101; Tousey v. Hastings, 127 App. Div. 94, 111 N. Y. Supp. 344, affirmed 194 N. Y. 79, 86 N. E. 831; White v. Devendorf, 127 App. Div. 791, 111 N. Y. Supp. 815.

Applying that test to the evidence adduced here, I am satisfied that the plaintiffs have failed to establish their contention, for the conversations testified to occurred many years ago, and when we make allowances for the frailty of human recollection, and also consider the fact that the most important portions of the evidence by which it was sought to establish this alleged agreement between Mr. and Mrs. Crowner was given by relatives of some of the plaintiffs, who were more or less interested in the result of this litigation, it cannot be said that the alleged agreement was certain and definite in its terms, or that it was established by evidence that was clear, convincing, and satisfactory.

There being no writing here, a court of equity would hardly be justified in finding that an agreement, so sweeping in its terms and so far-reaching in its consequences, had been established, when the evidence is wholly parol, and given largely by interested witnesses.

Moreover, even if the plaintiffs had established their contention in regard to the alleged agreement, the statute of limitations would preclude their recovery in this action. There is no pretense here on the part of the plaintiffs that there was an actual, express, and subsisting trust; it merely being claimed that the court, exercising its equity powers, can take hold of the situation and say that there was an implied trust, and that Mr. Crowner was a trustee ex maleficio. When there is an express trust, the statute of limitations would begin to run when the trustee openly repudiated the trust; but here, if Mr. Crowner was merely a trustee ex maleficio, as claimed by plaintiffs, and that this trust arose simply by implication, the statute of limitations began to run the minute Mathias Crowner came into possession of his wife's personal property, and demand by the plaintiffs on him to turn it over was not necessary. If the plaintiffs had established the agreement between Mr. and Mrs. Crowner, as they have attempted to do, then it was Mr. Crowner's duty, as soon as he received the property from the administrator of his wife's estate, to immediately distribute it among her relatives. Manifestly he did not do that, and they could have forthwith commenced an action against him to recover the property; for when he failed to turn it over to his wife's relatives he violated his agreement. It was then that he committed the wrong, and the statute began to run from that very time. Lammer v. Stoddard, 103 N. Y. 672, 9 N. E. 328; Mills v. Mills, 115 N. Y. 80, 21 N. E. 714; Yoeman v. Townshend, 74 Hun, 625, 26 N. Y. Supp. 606; Seitz v. Seitz, 59 App. Div. 150, 69 N. Y. Supp. 170.

Plaintiffs never began this action until the latter part of October, 1909, so it was barred under the six-year statute of limitations. Code Civ. Proc. § 380. It is also barred under the 10-year statute of limitations. Code Civ. Proc. § 388.

It is unnecessary to consider the other points urged by counsel for the various defendants, for I am compelled to reach the conclusion that the agreement referred to in plaintiff's complaint has not been es-

tablished, and, in addition to that, the action is barred by the statute of limitations.

For the foregoing reasons, the complaint must be dismissed; but, under the circumstances, only one bill of costs is allowed.